**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**MELISSA LADNER**                                                                             **PLAINTIFF**

**VERSUS**                                                **CIVIL ACTION NO. 1:10cv392-LG-RHW**

**COMMISSIONER OF
SOCIAL SECURITY**                                                          **DEFENDANT**

## REPORT AND RECOMMENDATION

This case is before the Court *sua sponte*, after review of the pleadings on file. The *pro se* Plaintiff Melissa Ladner filed this complaint on August 3, 2010 seeking judicial review of a decision of the Commissioner of Social Security. The docket reflects that service of process was completed in May 2011. The Commissioner of Social Security answered the complaint and filed the transcript of the administrative proceedings August 3, 2011, asserting the decision should be affirmed as it was based upon application of correct legal standards and factual findings supported by substantial evidence. *See*, docket entries [18], [19].

On August 26, 2011, the Court entered [21] its Standing Local Order applicable to judicial review of social security cases, which required that:

> Within 30 days from the filing of the defendant's answer, the plaintiff shall serve and file an appropriate dispositive motion seeking reversal or remand of the [Commissioner's] decision and a brief setting forth all errors and legal authorities which plaintiff contends entitle [her] to relief.

Since Defendant's answer predated entry of the Standing Local Order, the undersigned deemed August 26, 2011 to be the date time began to run for the filing of Ladner's motion.

On September 27, 2011, Ladner filed [22] a motion for "extension of time to help with preparing documents," which the Court construed to be a motion for extension of time for Ladner to file her dispositive motion and brief. By order [24] entered September 28, 2011, the Court

granted that motion, allowing Ladner until October 28, 2011 to file her dispositive motion and brief. Ladner did not file a motion. The only thing she filed was document [25] which is a list of her medications, symptoms, activities for which she allegedly requires assistance, complaints about a psychiatrist, current medical treatment, and an "eye-witness account" of Ladner's physical and mental condition. Plaintiff summarizes this document by stating she cannot hold a job; she is not after drugs; she cannot even wash a dish, transfer clothes from the washer to the dryer or take them from the dryer, and she has trouble with her legs swelling. [25, p. 6]

On February 12, 2012, the Court entered [26] a show cause order, finding that document [25] could not be deemed to be the motion and brief required of Ladner in this case because it did not identify any errors in the administrative proceedings or any legal authorities which entitle her to relief. The Court ordered Ladner to show cause by March 8, 2012 why the case should not be dismissed for her failure to file the proper motion and brief as required by [21] the Court's August 26, 2011 order.

On March 8, 2012, Ladner filed [27] a four-page document in which she states she did not work because she put her children first and could not find sitters who worked out; that her eye sight is bad, she does not drive at night, her blood sugar is not under control, she has no feeling in her hands or feet, and "there is no way [she] can stand or sit for no 2 hours let a lone (*sic*) 8 hours." [27, p. 1] Ladner complains the social security office did not send her to a medical doctor, that she is depressed, has digestive problems, diarrhea and urinary incontinence. The document goes on to state Ladner had gone for 84 hours without sleeping, and that she blew her nose which resulted in a nose bleed and bleeding from both ears. This is not a proper response to the Court's orders, and is not the motion and brief required by order [21]. However, despite Ladner's failure to file the required motion and brief, the undersigned has reviewed the

entire record, and concludes that the Commissioner's factual findings decision are supported by substantial evidence, and that the Commissioner applied the proper legal standard to those facts in determining that Ladner failed to prove her claim of disability.

On December 12, 2006, at the age of 49, Melissa Ladner, filed a claim for supplemental security income (SSI) alleging she had been disabled since January 1, 1997, and had not worked since 1983. [19-1, pp. 94-97, 59] Her application was denied initially and on reconsideration, and Ladner requested a hearing. [19-1, pp. 75-78, 81-84] The ALJ conducted the hearing on May 11, 2009, receiving documentary evidence and taking testimony from Ladner and from vocational expert Ronnie Smith. [19-1, pp. 51-74] At the time of the hearing, Ladner was separated from her husband of over 30 years, and living with her 18-year old son. She testified she quit school in the 12th grade, and does not have a GED. She stopped working in 1983 to take care of her son, and testified she is unable to work because she "can't stand to be around people," she does not want to even be in the same room with men, and does not trust women. She testified she would have anger management problems in a work setting. She once went to a free mental health clinic, but when she walked in, the doctor said something she did not like and she told him to "kiss (her) behind" and walked out, and has never gone back. [19-1, pp. 58-60, 64-65] Ladner takes a 2-milligram Valium daily, which is among several medications prescribed by Dr. Clifford Lowe, whom she has seen since around 2002. She testified she now sees Dr. Lowe every two to three months, and has seen no other doctors since 2007. [19-1, p. 57, 60-61]

Ladner says she has pain in her hips, knees, ankles, elbows, shoulders, hands and entire body for which she takes Tylenol III and Ultram, but she claims the medication does not really work, it merely dulls the pain which she rates at 8 out of 10 (ten being highest) with medication.

She testified that since the 1980s or early 1990s she has had migraines, lupus and fibromyalgia, diagnosed by Dr. Cook, but he is no longer in the area and his records were destroyed during Hurricane Katrina according to Ladner. [19-1, pp. 61-63][1]  Ladner has diabetes, but does not check her sugar regularly, and takes her medication when she can get it through ℞ Outreach.  She has problems sleeping, and testified she sleeps approximately 20 minutes a night.  She does sleep during the day, from 10:00 o'clock to around 2:00 o'clock.

Ladner testified her day consists of watching television, perhaps washing some clothes and trying to cook in the evening.  She is able to handle money and takes care of her own bills; she drives only in the daytime due to eye problems (she had a cataract removed from her right eye in December 2005, and testified she has a cataract in her left eye).  She testified she cannot grocery shop alone and her son takes out the trash.  She does not attend church or school events, has no friends and her grandchildren get on her nerves. [19-1, pp. 64-69]  Ladner claims her ability to work has been limited since January 1, 1997 by her diabetes, arthritis, panic attack, heart and eating problems. [19-2, p. 10]

## Standard of Review

Judicial review of a final decision of the Commissioner is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether the Commissioner's decision is reached through the application of correct legal standards.  *Falco v. Shalala*, 27 F. 3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

---

[1]Ladner states Dr. Cook told her she had lupus in 2001.  She began seeing Dr. Lowe in 2002, but his records do not indicate she told him anything about lupus until August 2007. [19-4, p. 64]  The undersigned found nothing in Dr. Lowe's records indicating Ladner actually has lupus.

more than a scintilla, but less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Villa v. Sullivan*, 895 F. 2d 1019, 1021-1022 (5th Cir. 1990). The Fifth Circuit has elaborated that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir.1988), quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983); *Abshire v. Bowen*, 848 F.2d 638 , 640 (5th Cir. 1988); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

In applying this standard, the Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F. 2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. The Court may neither substitute its judgment for that of the Commissioner nor re-weigh the record evidence. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (quoting *Ripley v. Chater*,67 F.3d 552, 555 (5th Cir. 1995) and citing *Johnson v. Bowen*, 864 F. 2d 340, 343-44 (5th Cir. 1988)) (footnotes and quotation marks omitted); *Selders v. Sullivan*, 914 F. 2d 614, 617 (5th Cir. 1990). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F. 3d 744, 745 (5th Cir. 2000); 28 U.S.C. § 405(g). Although the Court may reverse the Commissioner's decision if it is based upon faulty legal analysis, the Court should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's determination. *Boyd*, 239 F.3d at 704.

## Law and Analysis

As the one claiming disability benefits, Ladner bore the burden of proving a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. § 416.912; *Masterson v. v. Barnhart*, 309 F. 3d 267, 271 (5th Cir. 2002); *Selders v. Sullivan*, 914 F. 2d at 618; 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To the extent that her disability claim is based on pain, it was her burden to produce "objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged." *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989), *citing Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir.1985); 42 U.S.C. §423(d)(5)(A).

The ALJ clearly applied the correct legal standard, assessing Ladner's claims under the five-step sequential evaluation process for determining whether she was disabled. First, the ALJ found Ladner had not engaged in substantial gainful activity since December 12, 2006. Second, although Ladner submitted no objective medical evidence of any particular limitations caused by her ailments/conditions, the ALJ found from the medical records submitted that Ladner does have some severe impairments: mild arthritis, affective disorder and anxiety. [19-1, p. 30] Noting that the medical records indicated normal lung and heart findings, and that the more recent records through April 29, 2009 showed no additional findings with respect to any limitations regarding the claimed heart, lung and status post right eye cataract, the ALJ found the latter were not severe impairments under the Act, *i.e.*, they did not have more than a minimal impact on the ability to perform basic work activities. Third, the ALJ found Ladner does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; that, "No physician of record has

provided sufficient and credible findings which would satisfy the severity requirements" therein listed. [19-1, p. 31]

With respect to Ladner's arthritis claims, substantial evidence supports the ALJ's findings that Ladner had only mild arthritic changes in the hips without evidence of fracture, dislocation or bony destructive lesion, and that she had normal range of motion in all extremities with no deficits in ability to straight leg raise, walk on tiptoes, squat, ambulate or bend. [19-3, pp. 61, 71-72, 73] The ALJ also carefully considered evidence of Ladner's mental impairments and found, that while the evidence shows some anger management issues, there is no evidence of psychosis, memory deficits or dementia. Substantial evidence supports the ALJ's finding that Ladner has no marked limitations due to mental impairments, but is at most moderately impaired in ability to perform routine, repetitive tasks and to interact with co-workers and supervisors. [19-3, pp. 35-40], [19-3, pp. 42-55]. While the ALJ found Ladner's medically determinable impairments could be expected to cause symptoms, she did not find credible Ladner's statements concerning the intensity, persistence and limiting effects of the symptoms. As previously stated credibility of witnesses is for resolution by the Commissioner, not the Court.

The vocational expert testified that a person 52 years old with an 11th grade education and no past work history who can understand, remember and carry out simple and detailed instructions, maintain attention and concentration adequately for two-hour periods in an eight-hour workday and complete a normal workday without interruption from psychologically-based symptoms, and can relate appropriately to coworkers, supervisors and the general public on an occasional basis would be able to perform work in the national economy, *e.g.*, as a bench assembler, cafeteria attendant or kitchen helper, the first two are unskilled light work, and the last unskilled medium work, and such jobs exist in Mississippi and nationwide. [19-1, pp. 70-71]

## RECOMMENDATION

Upon consideration of the entire record of the proceedings below and the controlling law, the undersigned is of the opinion that the final decision rendered by the Commissioner is supported by substantial evidence and is in accord with relevant legal standards. Accordingly, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file written objections to it. Objections must be filed with the clerk of court and serve upon the other parties and submitted to the assigned District Judge. Within seven days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 28th day of March, 2012.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE